UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DOMENICO IANNUCCI,

       Plaintiff,      **MEMORANDUM AND ORDER**
                  2:15-cv-3493 (DRH)(ARL)

 - against –

LEWIS TREE SERVICE, INC., DEP'T OF
HOMELAND SECURITY – FEDERAL
EMERGENCY MANAGEMENT AGENCY,
DEP'T OF THE INTERIOR, JANE DOES
1–10, and EDGEWOOD INDUSTRIES,

       Defendants.
-------------------------------------------------------X

**APPEARANCES**

**LYNN, GARTNER, DUNNE & COVELLO, LLP**
Attorneys for Plaintiff
330 Old Country Road, Suite 103
Mineola, NY 11501
By: Joseph Covello, Esq.
   Robert P. Lynn, Jr., Esq.
   Steven W. Livingsten, Esq.
   Tiffany D. Frigenti, Esq.
   John Walter Dunne, Esq.

**ROBBINS GELLER**
Attorney for Plaintiff
58 S. Service Road, Suite 200
Melville, NY 11747
By: Moshe O. Boroosan, Esq.

**GOLDBERG SEGALLA, LLP**
AttorneyS for Defendant Lewis Tree Service, Inc.
200 Old Country Road, Suite 210
Mineola, NY 11501
By: Edward V. Schwendemann, Esq.
   Brendan Thomas Fitzpatrick, Esq.

**U.S. ATTORNEY'S OFFICE – EASTERN DISTRICT OF NEW YORK**
Attorney for Defendants Dep't of Homeland Security and Dep't of the Interior
610 Federal Plaza, 5th Floor
Central Islip, NY 11722
By:  Vincent Lipari, Esq.

**AHMUTY, DEMERS & MCMANUS**
Attorney for Defendant Edgewood Industries, Inc.
200 IU Willets Road
Albertson, NY 11507
By:  Jennifer Anne Casey, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Domenico Iannucci ("Plaintiff") brought this action under the Federal Tort Claims Act ("FTCA") against Defendants Department of Homeland Security ("DHS") – Federal Emergency Management Agency ("FEMA") and Department of the Interior ("DOI," collectively, "Federal Defendants"), and for common law negligence and violations of New York Labor Law ("NYLL") §§ 200, 240, 241, against Defendants Lewis Tree Service, Inc. ("Lewis") and Edgewood Industries ("Edgewood," collectively, "Private Defendants").

Presently before the Court are three separate motions for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56, brought by the Federal Defendants, Defendant Lewis, and Defendant Edgewood. As explained in more detail below, the Federal Defendants' motion is denied and the Private Defendants' motions are granted.

## BACKGROUND

The following facts are taken from the Parties' Rule 56.1 Statements, and are uncontested unless otherwise stated.

This case concerns an accident that occurred on November 21, 2012, in which Plaintiff fell while climbing down from a payloader when he was delivering it to Floyd Bennett Field

("Field") as part of the clean-up efforts following Hurricane Sandy. (P.'s R. 56.1 Stmt. in Response to Def. Lewis [ECF No. 65] ¶ 1.) In the aftermath of Hurricane Sandy, the Field was used as a staging area for debris collected from streets, homes, and utility lines from November 6, 2012 through March 6, 2013. (*Id.* ¶ 15.) All areas of the Field had flood lights powered by generators. (*Id.* ¶ 19.) There were also lights on all night at the adjacent football field. (*Id.* ¶ 21.) The Officer who was on duty the night of Plaintiff's accident testified that he never saw the lights out at nighttime. (*Id.* ¶ 22.)

Defendant Lewis had an emergency contract with the New York City Parks Department ("NYCPD") to clean up after storms. (*Id.* ¶ 34.) Defendant Lewis provided services and equipment, some of which was owned and some of which was leased. (*Id.* ¶ 36.) Equipment was leased if crews were unavailable after a major storm. (*Id.* ¶ 37.) Immediately following Hurricane Sandy, NYCPD directed Lewis, under a pre-existing contract, to collect and move trees damaged by the storm to the Field, where they would be ground into wood chips and burned. (Fed. Def's R. 56.1 Stmt. [ECF No. 72] ¶ 3.) Defendant Lewis subcontracted with Defendant Edgewood for a bulldozer and payloader to be delivered to the Field. (*Id.* ¶ 4.) Defendant Edgewood then sourced the bulldozer and payloader from DLI, Inc. (P.'s R. 56.1 Stmt. in Response to Def. Lewis ¶ 1.) Plaintiff owned DLI, Inc. (*Id.*) At the time of Plaintiff's accident, his company had owned the payloader for 12 years, and Plaintiff had gone up and down it hundreds of times without incident. (Fed. Def.'s R. 56.1 Stmt. ¶ 24.)

On November 20, 2012, at about 9:00 p.m., Plaintiff and his associate, William Bahrenburg, loaded a bulldozer into a 40-foot trailer in Melville and drove it to the Field. (*Id.* ¶ 6.) At about 10:00 p.m., Plaintiff and his associate entered the Field and happened upon a DHS trailer while looking for the designated parking area. (*Id.* ¶ 6.) A DHS officer came out of

the trailer to confirm Plaintiff's authority to make the delivery, and directed Plaintiff to a parking lot to drop off the bulldozer. (*Id.* ¶ 7.) Once parked, Plaintiff detached the trailer from the tractor, stepped up onto the trailer and into the bulldozer, and drove the bulldozer off the trailer to leave it in the parking lot. (*Id.* ¶ 8.)

Plaintiff and his associate left the Field around 10:30 p.m. and drove to pick up the payloader from a work site. (*Id.* ¶ 9.) At the work site, Plaintiff drove the payloader onto the trailer and positioned it at the lowest part of the trailer, which was 18 to 24 inches from the ground. (*Id.*) Plaintiff drove back to the Field to drop off the payloader in the parking lot, next to where he left the bulldozer. (*Id.* ¶ 11.) Plaintiff and his associate arrived around 2:00 or 3:00 a.m. on November 21, 2012. (*Id.*) Despite the presence of floodlights with generators, Plaintiff testified that parking lot was unlit on both trips and that he was able to see less when he arrived with the payloader than when he parked the bulldozer. (*Id.*)

The payloader had four steps that were used to go up and down between ground level and the platform next to the driver's booth, which is seven to seven and a half feet above the ground. (*Id.* ¶ 13.) The space between each of the four steps is about 13 or 14 inches, and the bottom step is flexible and about 14-16 inches above the ground. (*Id.*) Each step is a foot long and 4 inches wide, with a pointed steel surface to prevent slipping. (*Id.*) Two grab rails run along both sides of the steps and one extends above the platform. (*Id.* ¶ 15.) A person descending the payloader when it is mounted on the trailer would come down the four steps, and after the final step would lower first one foot and then the other foot 14-16 inches on to planks resting on the outriggers, and then step down 18-24 inches from the planks to the ground. (*Id.* ¶ 16.) The person would need to hold both grab rails throughout. (*Id.*)

After the trailer was detached and the chains removed, Plaintiff's associate went up and down the trailer and payloader steps, after realizing that he did not have the keys to open the driver door. (*Id.* ¶¶ 17–18.) Plaintiff's associate walked over to the bulldozer to search for the keys, at which point Plaintiff walked to the tractor and found a set of keys in the front cab. (*Id.* ¶ 19.) Plaintiff walked back to the payloader, stepped up into the trailer, went up the steps of the payloader while holding the grab rails, and stopped on the top platform to try the keys. (*Id.*) Plaintiff could not see the keyholes to open the door so he attempted to descend from the payloader. (*Id.* ¶ 20.) Plaintiff came down the first three steps of the payloader, holding the grab rails continuously and feeling with his foot before putting his weight on each step. (*Id.*) While holding the grab rails, Plaintiff put one foot on the last step of the pay loader, and lowered his other foot, intending to step down the 14-16 inch distance to the plank on the trailer. (*Id.* ¶ 20.) Plaintiff's next recollection was lying on the ground after he had been unconscious for 15 minutes. (*Id.* ¶ 21.) He regained consciousness upon hearing his associate's voice. (*Id.*) Plaintiff does not recall whether any part of his foot touched the plank, nor does he recall hitting the ground. (*Id.*) There were no witnesses to Plaintiff's fall. (*Id.* ¶ 23.)
After regaining consciousness, Plaintiff directed his associate to go into the cab and find universal keys. (*Id.* ¶ 26.) Plaintiff's associate then ascended the payloader and drove it off the trailer. (*Id.*) Shortly thereafter, park rangers arrived and helped Plaintiff into his truck. (*Id.* ¶ 27.) Plaintiff declined medical assistance, and instead connected the trailer to the tractor and drove an hour back to his office. (*Id.*) Plaintiff then drove several hours to and from another job, and returned to his house at 11:00 a.m. (*Id.* ¶ 28.) At about 5:00 p.m., Plaintiff' brother drove him to the hospital. (*Id.* ¶ 29.) He was diagnosed with a broken hip, a broken left wrist, and nerve damage to his face and eye, which required multiple surgeries. (*Id.* ¶ 29.)

After filing the required Notice of Claim, Plaintiff brought the instant action on June 16, 2015. (*See* Compl. [ECF No. 1].) Plaintiff filed an Amended Complaint on May 5, 2017 (Am. Compl. [ECF No. 46].)

**DISCUSSION**

I.  *Summary Judgment Legal Standard*

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing Anderson, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

   II.   Federal Defendants' Motion for Summary Judgment

      A. Negligence Legal Standard

Under the FTCA, the United States has consented to be sued for the "negligent or wrongful acts or omissions" of its employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). "[A] federal court presiding over an FTCA claim must apply the whole law of the State where the act or omission occurred." *Laidlaw v. United States*, 2019 WL 1313919, at *10 (E.D.N.Y.

Mar, 22, 2019) (quoting *Richards v. United states*, 369 U.S. 1, 11 (1962)) (internal quotation marks omitted). "Under New York law, the plaintiff must establish three elements in order to prevail on a negligence claim: (1) that defendant owed plaintiff a duty of care; (2) that defendant breached that duty; and (3) that the breach was the proximate cause of plaintiffs' injuries." *Laidlaw*, 2019 WL WL 1313919, at *10 (quoting *Hodder v. United States*, 328 F. Supp. 2d 335, 341 (E.D.N.Y. 2004)) (internal quotation marks omitted).

To establish that a breach was the proximate cause of the plaintiff's injuries, the "plaintiff must establish that the defendant's negligence was a substantial foreseeable factor in bringing about the plaintiff's injury." *Korean Air Lines Co., Ltd. v. McLean*, 118 F. Supp. 3d 471, 496 (E.D.N.Y. 2015). "The existence of a duty alone and 'the mere happening of an accident [do] not establish liability on the part of a defendant[;] . . . [rather], plaintiff [is] required to connect her injury to a breach of duty by defendant and to show that defendant's acts were a substantial cause of the events which produced the injury." *Id.* (quoting *Gunther v. Airtran Holdings, Inc.*, 2007 WL 193592, at *9 (S.D.N.Y. Jan. 24, 2007)) (internal quotation marks omitted). However, "[i]ssues of proximate cause are normally questions of fact for the jury to decide, unless the court concludes that a reasonable jury could reach only one conclusion." *See Packer v. Skid Roe, Inc.*, 938 F. Supp. 193, 196 (S.D.N.Y. 1996).

B.  Federal Defendants' Motion for Summary Judgment is Denied

Federal Defendants argue that Plaintiff "cannot show facts to satisfy his burden upon his motion and at trial of showing an essential element of his claim – i.e. that the United States' supposed negligence in failing to provide adequate lighting proximately caused him . . . to fall and sustain personal injuries." (Fed. Def.'s Mem. in Supp. [ECF No. 71] at 9.)  Federal

Defendants assert that they are entitled to summary judgment because Plaintiff cannot recall his fall, so "he cannot claim that he missed the step because of inadequate lighting." (*Id.* at 10.)

In support of their motion, Federal Defendants cite to seven New York State Court cases in which summary judgment was granted in favor of defendants because the plaintiff did not know what had caused the fall or accident. However, all of these cases are distinguishable on their face because the plaintiffs in such cases testified that they did not know what had caused the accident, whereas here, Plaintiff has testified that the lack of lighting and inability to see where he was stepping caused his fall. For example, in *Revesz v. Carey* the plaintiff asserted a negligence claim for a fall in her friend's backyard. 927 N.Y.S.2d 448, 450 (N.Y. App. Div. 2011). The plaintiff in *Revesz* described the backyard as a "'regular yard' with areas that 'went up and down," but both the plaintiff and her sister "specifically denied having observed any particular divots or irregularities." *Id.* Likewise, with respect to the *Revesz* plaintiff's claim of inadequate lighting, the "plaintiff failed to proffer sufficient proof from which it could be reasonably inferred that the lighting conditions were a proximate cause of her injury because she never testified that it was too dark to make any observations of the area or that a lack of lighting caused her to fall." *Id.* at 451. By comparison, in the case at bar, Plaintiff specifically testified that his inability to see caused his fall. (Transcript of Ianucci Deposition, Ex. 2 to Def. Lewis' R. 56.1 Stmt. [ECF No. 65-1] at 161.)

The same distinction can be drawn from the other cases Federal Defendants cite. *See Golba v. City of New York*, 813 N.Y.S. 2d 125, 126 (N.Y. App. Div. 2005) (explaining that the plaintiff's "own deposition testimony that she did not know what caused her fall was fatal to her complaint because the trier of fact would be required to base its finding of proximate cause on pure speculation"); *Fox v. Watermill Enters., Inc.*, 796 N.Y.S.2d 697, 698 (N.Y. App. Div. 2005)

(finding that defendants were entitled to judgment as a matter of law because of the plaintiff's deposition testimony that "he did not know what caused him to trip and fall"); *Curran v. Esposito*, 764 N.Y.S.2d 209, 210 (N.Y. App. Div. 2003) ("The plaintiff's deposition testimony [] plainly reveals that she does not know what caused her to trip and fall. . . . The plaintiff testified that there was light coming from the guest bedroom when she went to descend the staircase. She never stated that she was unable to see and that she misstepped as a result."); *Hartman v. Mountain Valley Brew Pub, Inc.*, 754 N.Y.S.2D 31, 32 (N.Y. App. Div. 2003) ("Hartman's admission at her deposition that she could not identify the alleged defect that caused her to fall is fatal"); *Colban v. Petterson Lighterage & Towing Corp.*, 19 N.Y.2d 794, 796 (1967) (affirming an order granting a motion to dismiss when the lower court found that the proximate cause of the injury was plaintiff slipping and not any failure on the part of the defendants). In *Wright v. South Nassau Communities Hospital*, the plaintiff testified that she did not know what had caused the accident, and then "[f]or the first time in his opposing affirmation, the plaintiff's counsel raised the question of whether the lighting in the area where the plaintiff fell was adequate." 678 N.Y.S.2d 636, 637 (N.Y. App. Div. 1998). In *Wright*, the only testimony that the lighting was inadequate was a "bare, conclusory statement by the plaintiff's husband, who was not present at the time of the accident[.]" *Id.*

Here, Plaintiff testified that he could not see the keys in his hand or the keyholes of the payloader driver door moments before he fell. (Transcript of Ianucci Deposition, Ex. 3 to P.'s R. 56.1 Stmt. [ECF No. 73-3] at 154.) Plaintiff further testified that he could not really see the payloader steps as he was walking down them. (*Id.* at 158.) Plaintiff also testified that he had told someone on the property that he needed lights, and that unloading in the dark was dangerous. (Transcript of Ianucci Deposition, Ex. 1 to Def. Lewis' R. 56.1 Stmt. [ECF No. 65]

at 99, 112.) Moreover, Federal Defendants' Rule 56.1 statement establishes that the parking lot was unlit when Plaintiff arrived to park the payloader, and that Plaintiff attested that he was able to see less on the payloader trip than on his initial trip to drop off the bulldozer. (Fed. Def.'s R. 56.1 Stmt. ¶ 11.) Finally, during his deposition Plaintiff stated that he fell because he "misjudged the [distance from the last step to the] ground because I couldn't see." (Transcript of Ianucci Deposition, Ex. 2 to Def. Lewis' R. 56.1 Stmt. at 161.) Federal Defendants take issue with the fact that Plaintiff cannot remember every moment of his fall, and argue that this means that any determination that the fall was due to inadequate lighting would be speculative. However, Plaintiff's testimony proffers sufficient circumstantial evidence from which it could be reasonably inferred that the lighting conditions were a proximate cause of his injury, and has raised a triable question of fact. *See DiSanto v. Spahui*, 169 A.D.3d 167, 169 (N.Y. App. Div. 2019) (quoting *Contantino v. Webel*, 57 A.D.3d 472, 472 (N.Y. App. Div. 2008)) ("Proximate cause may be established without direct evidence of causation, by inference from the circumstances of the accident"). Here, unlike in the cases the Federal Defendants cite, "the jury will not have to speculate as to the cause of plaintiff's fall, although it is always free to reject plaintiff's testimony regarding the same." *See Lofaro v. Grogan*, 34 Misc. 3d 1226 (N.Y. Sup. Ct. 2012) (finding that the plaintiff's testimony regarding the cause of her fall was distinguishable from the facts in *Curran*).

Federal Defendants devote significant effort to trying to establish a contradiction in Plaintiff's testimony because he answered on different occasions that he fell: (1) because he could not see, (2) because he missed the plank, and (3) because he missed the platform of the truck. (*See* Fed. Def.'s Reply Mem. in Supp. [ECF No. 75] at 6.) Preliminarily, Plaintiff's testimony seems to reflect that English is not his first language and that he is responding in each

instance to a slightly different question. However, whether Plaintiff was trying to step on the ground, the trailer, the truck, or a plank does not matter if he could not see where he was trying to land—which he unequivocally testifies to in his deposition. Either way, this is a question for the jury to decide, and Federal Defendants' argument does nothing to assure the Court that there are no outstanding questions of material fact. Accordingly, the Federal Defendants' motion for summary judgment is denied.

    III.    *Private Defendants' Motions for Summary Judgment*

        A. Private Defendants' Motions for Summary Judgment are Granted as to Plaintiff's Negligence Claim and NYLL § 200 Claim

NYLL § 200 "is a codification of the common law duty on the part of landowners and general contractors to maintain a safe workplace." *Lamela v. City of New York*, 560 F. Supp. 2d 214, 221 (E.D.N.Y. 2008) (citing *Wojcik v. 42nd Street Dev. Project, Inc.*, 386 F. Supp. 2d 442, 455–56 (S.D.N.Y. 2005)). Therefore, it is appropriate to analyze a common law negligence claim and § 200 claim simultaneously. *Id.*

Claims brought under § 200 "fall into two broad categories: those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed." *Cappabianca v. Skanska USA Bldg. Inc.*, 99 A.D.3d 139, 143–44 (N.Y. App. Div. 2012). "Where, as here, the accident arises not from the methods or manner of the work, but from a dangerous premises condition, 'a property owner is liable under Labor Law § 200 when the owner created the dangerous condition causing an injury or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice.'" *Mendoza v. Highpoint Associates, IX, LLC*, 83 A.D.3d 1, 9 (N.Y. App. Div. 2011); *see also Bradley v. HWA 1290 III LLC*, 157 A.D.3d 627, 629 (N.Y. App. Div. 2018) (quoting the same).

The Court will now apply these principles to each of the Private Defendants.  As for Defendant Edgewood, Plaintiff does not dispute that the only direction he received regarding the machinery was that they were to be delivered as soon as possible.  (P.'s R. 56.1 Stmt. in Response to Def. Edgewood [ECF No. 68] ¶ 35.)  Moreover, Plaintiff concedes that Defendant Edgewood was not at the Field when the accident occurred, that its only involvement with the work being done at the Field was to ask Plaintiff to deliver the machines there; that it did not use the machines or direct any work done with them; that Defendant Edgewood's part-owner Frank Suppa told Plaintiff the day before the accident that the security guards would direct Plaintiff where to unload the machines; and that Plaintiff never mentioned the lighting conditions to Mr. Suppa before his accident.  (*Id.* ¶¶ 40–46.)  As Defendant Edgewood had no contact with the Field beyond asking Plaintiff to deliver the machines there, it cannot have created the dangerous condition with the insufficient lighting.  This is particularly true in light of the fact that Defendant Edgewood did not tell Plaintiff to park in the area of the parking lot that was allegedly dark.  As Plaintiff never told Defendant Edgewood about the lighting issue and Defendant Edgewood had no other contact with the Field, it cannot have had actual or constructive notice of the dangerous condition.  Accordingly, Defendant Edgewood's motion for summary judgment is granted as to Plaintiff's negligence and NYLL § 200 claims.

As for Defendant Lewis, there is no evidence in the record that such Defendant created the dangerous condition or had actual or constructive notice of it.  As an initial matter, there is a dispute over whether NYCPD or Defendant Lewis controlled the Field, and who between them dictated where the materials were to be placed at the field.  (*See* P.'s R. 56.1 Stmt. in Response to Def. Lewis ¶¶ 41, 67.)  However, Plaintiff concedes that security personnel, not Defendant Lewis' employees, were stationed at the entrance at all times.  (*Id.* ¶ 24.)  Moreover, Plaintiff

concedes that Defendant Lewis' employees worked from 7 a.m. to 7 p.m. and not thereafter, and that during the initial post-Sandy clean-up Defendant Lewis did not have employees working at the Field full-time as they would travel there to dump debris and then leave. (*Id.* ¶¶ 51, 53.) With regards to the evening of the accident, the Parties agree that Plaintiff and/or his associate communicated with Defendant Lewis about the delivery of the equipment but Defendant Lewis did not oversee such delivery. (*Id.* ¶¶ 54, 55.) Perhaps most notably, Defendant Lewis' representative testified that the company did not know about the lighting condition in the staging area during the evening as no representatives were there after 7 p.m. (*Id.* ¶ 173.) In fact, Defendant Lewis was not even allowed to dump debris on the premises after 7 p.m. (*Id.* ¶ 52.)

In light of the foregoing, there is no indication that Defendant Lewis created the dangerous condition. Since Defendant Lewis did not have employees on-site and only used the Field to drop off debris, it cannot have created the dangerous condition of insufficient lighting at 2 a.m. This conclusion is bolstered by the uncontested fact that Defendant Lewis' employees were not on, or even allowed on, the property after 7 p.m. Likewise, Defendant Lewis could not have had actual or constructive notice of the dangerous condition if their employees were never on the premises at 2 a.m. Plaintiff testified that the lighting was worse at 2 a.m. when he returned to deliver the payloader than it was at 10:30 p.m. when he initially delivered the bulldozer. If Defendant Lewis' employees left at 7 p.m.–six or more hours before Plaintiff's accident—and the quality of the lighting was progressively decreasing over the course of the night, then Defendant Lewis would not have known at 7 p.m. what the lighting would be like at 2 a.m. Finally, there is no evidence in the record that Plaintiff told Defendant Lewis' employees about the lack of lighting when he arrived to deliver the payloader. Rather, Plaintiff concedes that his sole communication with Defendant Lewis' employee was before he delivered the

bulldozer. (P.'s R. 56.1 Stmt. in Response to Def. Lewis ¶¶ 105, 115.) Therefore, Defendant Lewis' motion for summary judgment is granted as to Plaintiff's negligence and NYLL § 200 claims.

### B. Private Defendants' Motions for Summary Judgment are Granted as to Plaintiff's NYLL § 240(1) Claim

NYLL § 240(1) provides in pertinent part:

> All contractors and owners and their agents, . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Here, Private Defendants argue that Plaintiff's accident is not encompassed by this section because Plaintiff only fell 3 feet, which is not the type of elevation that is contemplated. The New York State Court of Appeals has cautioned that:

> Not every worker who falls at a construction site . . . gives rise to the extraordinary protections of Labor Law § 240(1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein.

*Narducci v. Manhasset Bay Assocs.*, 96 N.Y.2d 259, 267 (N.Y. 2001). "In other words, it is insufficient that the injury resulted from an 'elevation differential;' it must also be established that 'the proper "erection," "construction," "placement," or "operation" of one or more devices of the sort listed in section 240(1) would allegedly have prevented the injury." *Rocovich v. Consolidated Edison, Co.*, 78 N.Y.2d 509, 514 (1991). Furthermore, the New York Court of Appeals has held that "workers who fall when working on, or getting down from the surface of a flatbed truck that is between four and five feet off the ground may not recover under Labor Law § 240(1), because their injuries did not result from the sort of 'elevation-related risk' that is

essential to a cause of action under that section." *Toefer v. Long Island R.R.*, 4 N.Y.3d 399, 405 (N.Y. 2005).

In the case at bar, Plaintiff's injury was allegedly caused by the lack of lighting and his inability to see where he was stepping. There is nothing in the record regarding the need for any kind of safety device for Plaintiff to ascend or descend from the payloader. The Court also notes that Plaintiff owned (through his company) the payloader and the trailer from which he fell, and he testified that he had mounted and unmounted his equipment the same way for over a decade. As such, Private Defendants' liability is not contingent upon the failure to use, or the inadequacy of, a safety device enumerated in § 240(1). Additionally, while Plaintiff's injuries were severe, he only fell three feet. This is not a height that would generally be covered by § 240(1). Accordingly, Private Defendants' motion for summary judgment is granted as to Plaintiff's § 240(1) claim.

### C. Private Defendants' Motions for Summary Judgment are Granted as to Plaintiff's NYLL § 241(6) Claim

NYLL § 241(6) "requires contractors and owners to provide 'reasonable and adequate protection and safety' to employees working in, and persons lawfully frequenting, '[a]ll areas in which construction, excavation, or demolition work is being performed.'" *Jock v. Fien*, 80 N.Y.2d 965, 968 (N.Y. 1992). The Private Defendants argue that Plaintiff's activity delivering the payloader is not covered by § 241(6) because it is not "construction, excavation, or demolition work." Plaintiff counters that construction work includes the repair of buildings, which was the nature of much of the post-Sandy clean-up, and that delivery of the payloader was an integral part of that process.

The Court is not persuaded by Plaintiff's argument. Even if the post-Sandy clean-up effort qualified as construction under NYLL § 241(6)—which the Court is not sure it does—

Plaintiff's delivery was made to a separate location rather than to the site of a building being repaired. *See Haines v. Dick's Concrete Co., Inc.*, 84 A.D.3d 732, 734 (N.Y. App. Div. 2011) (affirming summary judgment dismissing a § 241(6) claim where the delivery was not to a construction site, but rather to a vendor's location). The cases Plaintiff cites are distinguishable from the facts herein because in those cases the deliveries were made to the construction site, rather than to a separate staging location. *See White v. Village of Port Chester*, 92 A.D.3d 872, 875 (N.Y. App. Div. 2012) ("the injured plaintiff . . . picked up steel from the defendant . . . and delivered it to the area outside [the construction site], parking his truck along a sidewalk area where freshly poured concrete was covered with a plastic sheet that extended into the roadway"); *Simms v. Elm Ridge Associates*, 259 A.D.2d 538, 539 (N.Y. App. Div. 1999) ("The plaintiff was delivering a combination clothes washer-dryer weighing several hundred pounds which was to be installed in a condominium unit being constructed by the appellants. He slipped and fell, allegedly on some threaded metal rods strewn about the floor of the unit, thereby injuring himself"). By comparison, Plaintiff delivered the payloader to a designated staging area that was solely used to collect and process debris; he did not deliver the payloader to the site where the debris was actually being removed from damaged structures.

"To be afforded the protection of [§ 241(6)], the worker must be engaged in construction, excavation, or demolition which has an impact on the 'structural integrity of the building or structure or was an integral part of the construction of a building or structure.'" *Sajita v. Latham Four Partnership*, 282 A.D.2d 969, 971 (N.Y. App. Div. 2001). Plaintiff's delivery of a payloader to a staging site for debris collected after a hurricane has no impact on the structural integrity of a building or structure and is not an integral part of the construction of any of the

repaired buildings or structures. Thus, Plaintiff's delivery is not a protected activity under § 241(6), and the Private Defendants' motion for summary judgment is granted as to such claim.

## CONCLUSION

For the foregoing reasons, the Federal Defendants' motion for summary judgment is denied and the Private Defendants' motions for summary judgment are granted. The Clerk of Court is directed to terminate Defendant Lewis and Defendant Edgewood as parties to this action. Given that there is no request to enter judgment pursuant to Rule 54(b) as to fewer than all parties or claims, judgment will not be entered at this time.

**SO ORDERED.**
Dated: Central Islip, New York
April 3, 2019

/s/
Denis R. Hurley
United States District Judge*/